# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

RALPH SCHNEIDER,

    *Petitioner*,

vs.

E.K. MCDANIEL, *et al.*,

    *Respondents.*

3:06-cv-00449-KJD-RAM

ORDER

This habeas matter under 28 U.S.C. § 2254 comes before the Court for a decision on the merits on the sole remaining ground, in which petitioner alleges that a mistrial was required under clearly established federal law after his co-defendant referred to his involvement with the Aryan Brotherhood, a white supremacist gang.

### *Background*

Petitioner Ralph Schneider seeks to set aside his 1997 Nevada state conviction, following a jury verdict, of robbery with the use of a deadly weapon, false imprisonment, battery with a deadly weapon, and battery causing substantial bodily harm.

Schneider's girlfriend and co-defendant, Lisa Dehmer, sought to introduce post-arrest letters from Schneider to her that – in the midst of extensive unrelated content – referred to his affiliation with or sympathy for the Aryan Brotherhood. Dehmer sought the admission of the letters in support of a claim that she had been coerced into aiding and abetting the offenses. Schneider objected to the admission of the letters, and he further moved in limine

at the beginning of the trial for the exclusion of any evidence regarding affiliation with the Aryan Brotherhood as a violation of his constitutional right of freedom of association. The state trial court deferred a ruling until the court had an opportunity to review the letters.[1]

On a subsequent break, after having reviewed the letters, the trial court heard additional argument. The trial court ruled that the letters could not be admitted, but the court did so solely on the ground that the letters themselves did not contain evidence of coercion. Petitioner does not identify any point in the trial record where the state trial court entered a broad order prohibiting reference to the Aryan Brotherhood. The judge instead stated that "I'm not concerned with the political affiliation." The only admonition given by the judge was to "stay away from the letters." Petitioner, again, does not identify any point in the trial record where the state trial court in fact imposed a blanket prohibition on references to the Aryan Brotherhood.[2]

Dehmer's testimony on direct examination by her counsel included the following testimony regarding why she did not follow through with an opportunity to cooperate with the police and seek refuge in a battered woman's shelter:

> Q   Why didn't you go through with it? Here's somebody to help you.
>
> A   Because I would have been considered a snitch, and I would have been – I mean, it just – I don't – he scares me.
>
> Q   No. [sic] You just said something. You would have been considered a snitch. Isn't that biker babe terminology, "I'd be considered a snitch"?
>
> A   No, sir, not biker babe. More Aryan Warriors.
>
> Q   What does it mean. What do they do to snitches?
>
> A   They kill them.
>
> Q   You thought that was a real threat to you?

---

[1] See #24, Ex. 50 (letters); #22, Ex. 12, at 10-13 (initial argument and reservation of ruling by the state trial court).

[2] See #22, Ex. 12, at 201-08. Assertions that the court did so are not supported by the record cited.

-2-

> A Oh, yes, it is. I know this for a fact.
>
> Q Even in the future?
>
> A Yup.
>
> Q There are penalties for testifying, aren't there?
>
> A Your life.
>
> Q There's penalties for cooperating with the police; is there not – are there not?
>
> A Yes.

#22, Ex. 12, Part 2, at 295-96.

Schneider's counsel did not object to the foregoing testimony.

Subsequently, during cross-examination of Dehmer by Schneider's counsel, which included many contentious exchanges, the following exchange occurred:

> Q And you felt a lot of times like Ralph [Schneider] had people watching you, right?
>
> A I said sometimes that he got me to that point, but, no, I was not hallucinating, because he had friends that, like Wolf, okay, and Andy. Yeah.
>
> Q Sounds like a heroin-induced psychosis to me.
>
> A No. It's a little circle of Aryan Brotherhood. Okay. They stick together --
>
> MR. HALL: Your Honor, I'm going to ask that --
>
> THE WITNESS: And a woman –
>
> MR. HALL: – that comment be stricken from the record.
>
> THE WITNESS: That's what they do.
>
> THE COURT: I agree. That wasn't responsive, so just strike it.
>
> MR. HALL: I'm going to ask that the jury be admonished to disregard that comment.
>
> THE COURT: Go ahead and disregard the comment, please, ladies and gentlemen.

#22, Ex. 12, Parts 2 & 3, at 315-16.

-3-

Schneider moved for a mistrial at the close of all of the evidence due to Dehmer's references to the Aryan Brotherhood or Warriors in her testimony. His counsel asserted that the state trial court had been "very specific and very clear" that information regarding affiliation with the Aryan Brotherhood "should not be brought in in any form." This Court notes again, however, that petitioner does not identify the point in the trial court record where this allegedly very specific and very clear admonition in fact was given by the state trial court. The trial court denied the motion for a mistrial on the basis that the matter had been cured and did not warrant the extreme measure of a mistrial.[3]

On direct appeal, the Supreme Court of Nevada rejected the claim presented to that court on the following grounds:

> The denial of a motion for mistrial is . . . within the district court's sound discretion. Smith v. State, 110 Nev. 1094, 1102-03, 881 P.2d 649, 654 (1994). Appellant moved for a mistrial based on evidence that connected him with a white supremacist organization. The First Amendment prevents a state "from employing evidence of a defendant's abstract beliefs at a sentencing hearing when those beliefs have no bearing on the issue being tried." Dawson v. Delaware, 503 U.S. 159, 168 (1992). This court has held that "admission of irrelevant evidence of constitutionally protected First Amendment activities is also erroneous during a trial's guilt phase, but . . . does not and should not require automatic reversal." Flanagan v. State, 112 Nev. 1409, 1419, 930 P.2d 691, 697 (1996).
>
> We conclude that no error requiring a mistrial occurred here. First, the state did not elicit the disputed evidence or employ it in any way. Second, the evidence consisted only of two short remarks by the codefendant, referring to the Aryan Warriors and the Aryan Brotherhood. The first was not even objected to, and the district court immediately admonished the jury to disregard the second. We conclude that these remarks did not prejudice appellant. Therefore, no grounds for a mistrial existed, and the court did not err in denying the motion.

#23, Ex. 25, at 2-3.

### *Governing Standard of Review*

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 117 S.Ct. 2059,

---

[3] #22, Ex. 12, at 391-94.

-4-

2066 n.7(1997). Under this deferential standard of review, a federal court may not grant habeas relief merely on the basis that a state court decision was incorrect or erroneous. *E.g., Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003). Instead, under 28 U.S.C. § 2254(d), the federal court may grant habeas relief only if the decision: (1) was either contrary to or involved an unreasonable application of clearly established law as determined by the United States Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. *E.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 15, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003).

A state court decision is "contrary to" law clearly established by the Supreme Court only if it applies a rule that contradicts the governing law set forth in Supreme Court case law or if the decision confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result. *E.g., Mitchell,* 540 U.S. at 15-16, 124 S.Ct. at 10. A state court decision is not contrary to established federal law merely because it does not cite the Supreme Court's opinions. *Id.* Indeed, the Supreme Court has held that a state court need not even be aware of its precedents, so long as neither the reasoning nor the result of its decision contradicts them. *Id.* Moreover, "[a] federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." *Mitchell*, 540 U.S. at 16, 124 S.Ct. at 11. For, at bottom, a decision that does not conflict with the reasoning or holdings of Supreme Court precedent is not contrary to clearly established federal law.

A state court decision constitutes an "unreasonable application" of clearly established federal law only if it is demonstrated that the court's application of Supreme Court precedent to the facts of the case was not only incorrect but "objectively unreasonable." *E.g., Mitchell*, 540 U.S. at 18, 124 S.Ct. at 12; *Davis v. Woodford*, 333 F.3d 982, 990 (9th Cir. 2003).

To the extent that the state court's factual findings are challenged intrinsically based upon evidence in the state court record, the "unreasonable determination of fact" clause of Section 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly

deferential" to state court factual determinations. *Id*. The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, the AEDPA requires substantially more deference:

> . . . . [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

If the state court factual findings withstand intrinsic review under this deferential standard, they then are clothed in a presumption of correctness under 28 U.S.C. § 2254(e)(1); and they may be overturned based on new evidence offered for the first time in federal court, if other procedural prerequisites are met, only on clear and convincing proof. 393 F.3d at 972.

The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Davis*, 333 F.3d at 991.

### *Discussion*

In Ground 1, Schneider alleges that he was denied First and Fourteenth Amendment rights to freedom of association, due process of law, and a fair trial when the trial court denied the motion for mistrial based upon his co-defendant Lisa Dehmer's testimony referring to the Aryan Brotherhood.

Petitioner contends that the Nevada Supreme Court's rejection of his claim was an objectively unreasonable application of the United States Supreme Court decision in *Dawson v. Delaware*, 503 U.S. 159, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992).

In *Dawson*, the Supreme Court held that the First and Fourteenth Amendments prohibit the introduction in a capital sentencing proceeding of the fact that the defendant was a member of the Aryan Brotherhood where that evidence had no relevance to the issues being decided in the sentencing proceeding. 503 U.S. at 160, 112 S.Ct. at 1095. Significantly, the Court expressly rejected the broad proposition that "the Constitution forbids the consideration in sentencing of any evidence concerning beliefs or activities that are protected under the

First Amendment." 503 U.S. at 164, 112 S.Ct. at 1097. The Court instead held that "the Constitution does not erect a *per se* barrier to the admission of evidence concerning one's beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment." 503 U.S. at 165, 112 S.Ct. at 1097.

*Dawson* thus hinged upon the specific character of the evidence presented at the sentencing in that case, which was distilled down exclusively to evidence of abstract beliefs rather than relevant actions. As explained by the Court:

> Although we cannot accept Dawson's broad submission, we nevertheless agree with him that, in this case, the receipt into evidence of the stipulation regarding his membership in the Aryan Brotherhood was constitutional error. Before the penalty hearing, the prosecution claimed that its expert witness would show that the Aryan Brotherhood is a white racist prison gang that is associated with drugs and violent escape attempts at prisons, and that advocates the murder of fellow inmates. If credible and otherwise admissible evidence to that effect had been presented, we would have a much different case. But, after reaching an agreement with Dawson, the prosecution limited its proof regarding the Aryan Brotherhood to the stipulation. The brief stipulation proved only that an Aryan Brotherhood prison gang originated in California in the 1960's, that it entertains white racist beliefs, and that a separate gang in the Delaware prison system calls itself the Aryan Brotherhood. We conclude that the narrowness of the stipulation left the Aryan Brotherhood evidence totally without relevance to Dawson's sentencing proceeding.
>
> . . . . .
>
> Even if the Delaware group to which Dawson allegedly belongs is racist, those beliefs, so far as we can determine, had no relevance to the sentencing proceeding in this case. For example, the Aryan Brotherhood evidence was not tied in any way to the murder of Dawson's victim. . . . .
>
> Because the prosecution did not prove that the Aryan Brotherhood had committed any unlawful or violent acts, or had even endorsed such acts, the Aryan Brotherhood evidence was also not relevant to help prove any aggravating circumstance. In many cases, for example, associational evidence might serve a legitimate purpose in showing that a defendant represents a future danger to society. A defendant's membership in an organization that endorses the killing of any identifiable group, for example, might be relevant to a jury's inquiry into whether the defendant will be dangerous in the future. Other evidence concerning a defendant's associations might be relevant in proving other aggravating circumstances. But the inference which the jury was invited to draw in this case tended to prove nothing

> more than the abstract beliefs of the Delaware chapter. . . . . Whatever label is given to the evidence presented . . . we conclude that Dawson's First Amendment rights were violated by the admission of the Aryan Brotherhood evidence in this case, because the evidence proved nothing more than Dawson's abstract beliefs. . . . . Delaware might have avoided this problem if it had presented evidence showing more than mere abstract beliefs on Dawson's part, but on the present record one is left with the feeling that the Aryan Brotherhood evidence was employed simply because the jury would find these beliefs morally reprehensible. Because Delaware failed to do more, we cannot find the evidence was properly admitted as relevant character evidence.
>
> . . . . [The First Amendment] prohibits the State from requiring information from an organization that would impinge on First Amendment associational rights if there is no connection between the information sought and the State's interest. . . . . We think that it similarly prevents Delaware here from employing evidence of a defendant's abstract beliefs at a sentencing hearing when those beliefs have no bearing on the issue being tried.

503 U.S. at 165-68, 112 S.Ct. at 1097-99.

The Supreme Court further left the issue of harmless error for the lower court on remand. 503 U.S. at 168-69, 112 S.Ct. at 1099.

In the present case, the parties debate whether the Nevada Supreme Court's decision in this case can be contrary to or an unreasonable application of *Dawson* due to the fact that *Dawson* arose in the context of the penalty phase proceeding rather than a trial on guilt or innocence. Respondents urge that the United States Supreme Court to date has not extended *Dawson* to the latter context.

While perhaps of academic interest,[4] the resolution of the present case in truth does not turn upon this debate. The relevant bases for the state supreme court's rejection of Schneider's claim were, first, an express holding that, where applicable, *Dawson* does not require automatic reversal whenever references to gang affiliation are made, and, second, an implicit holding that *Dawson* did not require reversal on the facts presented.

---

[4]On the one hand, petitioner's burden is to demonstrate that the state court decision is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court, not decisions of lower federal and state courts expanding upon Supreme Court precedent. On the other hand, the Supreme Court of Nevada in this case did not reject the claim on the basis that *Dawson* applies only to penalty phase proceedings.

Neither of these holdings constituted an objectively unreasonable application of *Dawson*.

First, the express holding that *Dawson* does not require automatic reversal was not an objectively unreasonable application of the decision. At the outset, *Dawson* clearly holds that the Constitution does not erect a *per se* barrier to references to gang affiliation. The Supreme Court expressly held that the Constitution does not do so. Moreover, the Supreme Court further did not rule out application of the harmless error analysis when error is present.

Second, the holding that *Dawson* did not require a mistrial on the facts presented also was not an objectively unreasonable application of the decision. Indeed, it is debatable whether Dehmer's testimony gave rise to error under *Dawson* in the first instance. What *Dawson* prohibits is introduction of evidence of only abstract beliefs having no relevance to any issue in the case. Dehmer instead was referring in her first statement to the alleged practices, not the beliefs, of the Aryan Brotherhood as it related to her actions and inactions. And her second statement, which was stricken, similarly referred to actions rather than beliefs of the group. A different issue, perhaps, might have been presented if the evidence had been admitted by the State over objection. However, the Nevada Supreme Court's conclusion in the present case that *Dawson* – which concerned evidence going strictly and exclusively to the abstract beliefs rather than the actions of an organization, without any other relevance – did not require reversal in the circumstances presented was not an objectively unreasonable application of the United States Supreme Court precedent.[5]

Ground 1 therefore does not provide a basis for federal habeas relief.[6]

---

[5] Petitioner's reliance on federal circuit cases is misplaced. His burden under the AEDPA is to demonstrate that the state supreme court's decision was an unreasonable application of clearly established federal law *as determined by the United States Supreme Court.* The cases in any event are distinguishable.

[6] Petitioner requests an evidentiary hearing on the claim. Petitioner does not explain how the claim lends itself to an evidentiary hearing. Ground 1 is a claim of trial error based upon the failure of the state district court to grant a mistrial based upon what Lisa Dehmer said at trial. Her statements in the record either were a basis for a mistrial or they were not. Moreover, petitioner has not demonstrated satisfaction of the requirements for a federal evidentiary hearing under 28 U.S.C. § 2254(e)(2). This was a direct appeal claim in the state courts, and petitioner was represented by counsel both at trial and on appeal. He provides
(continued...)

1   IT THEREFORE IS ORDERED that the remaining claim in the petition for a writ of
habeas corpus shall be DENIED on the merits and that this action shall be DISMISSED with
prejudice.

The Clerk of Court shall enter final judgment accordingly, in favor of respondents and
against petitioner, dismissing this action with prejudice.

DATED: July 8, 2009

_____
KENT J. DAWSON
United States District Judge

---

[6](...continued)
no explanation for the failure to develop any further factual basis for the claim of trial error in the state courts.

-10-